UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cr-00245-SEB-MJD |
| | ) | |
| JUSTIN ANNICHIARICO-SALAZAR, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**

This matter is before the Court on Defendant Justin Annichiarico-Salazar's ("Mr. Salazar") Motion to Revoke, dkt. 21, the Order of Detention, dkt. 20, entered by the Magistrate Judge on December 30, 2025, following the December 29, 2025 hearing. Mr. Salazar has timely challenged the detention order in his January 13, 2026, motion and the Government has responded as of January 16, 2026. Mr. Salazar filed his reply on January 22, 2026. Thus, Mr. Salazar's Motion to Revoke Detention Order is now fully briefed and ripe for ruling.

Mr. Salazar has been indicted for one count of Illegal Possession of a Machinegun, in violation of 18 U.S.C. § 922(o).[1] Dkt. 1. According to the Indictment, between August 19, 2025, and October 21, 2025, Mr. Salazar knowingly possessed a semiautomatic pistol equipped with a machinegun conversion device.

---

[1] Section 922(o) provides that "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1).

1

On December 29, 2025, during the detention hearing, the Magistrate Judge reviewed the charge in the Indictment as well as the Pretrial Services Report, the testimony of Homeland Security Investigations Agent Jack Callahan ("Agent Callahan"), and eight proffered photographic and video exhibits. The facts adduced at the detention hearing are undisputed: on October 21, 2025, officers with the Brownsburg Police Department initiated a traffic stop of a black Honda Accord whose driver and sole occupant was Mr. Salazar. After a K-9 sniff search gave a positive alert to the odor of controlled substances, the officers conducted a physical search of Mr. Salazar's vehicle, which revealed a Glock 22 Generation 5 pistol with an extended magazine containing twenty .40-caliber bullets. The pistol had been modified with an internal sear, which allows a semiautomatic firearm, such as that found under the front seat of Mr. Salazar's vehicle, to be operated as a fully automatic firearm or as a machinegun. Within the cab of the Honda Accord, law enforcement also discovered a .40-caliber shell casing, eight .223 Remington bullets and a single .40-caliber bullet. No controlled substances were recovered from Mr. Salazar's vehicle.

Based on the foregoing, state criminal proceedings were lodged against Mr. Salazar. Fabiola and Joshua Starns, Mr. Salazar's mother and stepfather, posted a $3,000 bond to secure Mr. Salazar's pretrial release and thereafter permitted him to reside in their family home in Brownsburg, Indiana, though Mr. Salazar was not residing there at the time of his arrest. Dkt. 21-1 at 25–27. There is no evidence that Mr. Salazar failed to abide by the terms of his pretrial release from state custody. *Id.* at 28. Mr. Starns informed Mr. Salazar's counsel who informed the Court that Mr. Salazar's Honda Accord has now been sold "so

that Mr. Salazar would not have access to . . . any means of transportation outside of his parents." *Id.* at 26–27.

On December 18, 2025, following the Federal Grand Jury return of the indictment, state law enforcement authorities voluntarily dismissed the state information in deference to the federal charges. Mr. Salazar was arrested by federal agents on December 19, 2025, and made his initial appearance on December 22, 2025. Dkt. 13. The Pretrial Services Report was docketed on December 23, 2025. Dkt. 16.

A preliminary report from the National Integrated Ballistic Information Network ("NIBIN") connected a casing from the firearm found inside Mr. Salazar's vehicle with the following investigations: a September 16, 2025, incident of criminal recklessness; a September 19, 2025, incident of criminal mischief; and a September 30, 2025, Indianapolis homicide. Dkt. 24-1. However, as Agent Callahan conceded during his testimony at the detention hearing, NIBIN reports, such as the one introduced at the December 29, 2025, detention hearing, are not regarded as reliable proof and thus are generally deemed insufficient to establish probable cause. Dkt. 21-1 at 18–19.

The investigation into Mr. Salazar's iCloud account revealed evidence disclosing the manner in which Mr. Salazar has previously wielded firearms, including the Glock pistol seized from his vehicle. For example, an August 19, 2025, video depicts Mr. Salazar firing (what appears to be the same) gun from out a window of a moving vehicle. Dkt. 26 (Ex. 2, manual filing). Other videos recovered from Mr. Salazar's iCloud account depict Mr. Salazar discharging another automatic firearm from the window of a moving vehicle, *id.* (Ex. 6); firing an automatic firearm into a neighborhood pond, *id.* (Ex.7); and shooting a

3

firearm out of a sunroof as he operated a motor vehicle, *id.* (Ex. 9).[2] Investigators also discovered a photograph of Mr. Salazar holding a small baggie of (suspected) controlled substances in an amount that was "most likely for personal use," according to Agent Callahan. Dkt. 19-3; dkt. 21-1 at 20.

Another video, taken on September 30, 2025, and discovered on Mr. Salazar's iCloud, revealed an unidentified person shooting a gun out the window of a moving vehicle directly at a home, though the video footage does not conclusively establish that Mr. Salazar was physically present during this incident. *Id.* (Ex. 10); dkt. 21-1 at 42. Indeed, as Agent Callahan explained, there are "numerous ways for" videos and photos to end up in an iCloud account, suggesting that the presence of incriminating videos within Mr. Salazar's account does not conclusively establish that Mr. Salazar himself recorded the videos or was even present at the time the videos were recorded. Dkt. 21-1 at 21.

The Pretrial Services Report (the "PS3") discloses that Mr. Salazar is an eighteen-year-old young man, who is a permanent resident of the United States having moved from the country of Colombia to Brownsburg, Indiana, in June 2022 to live with his mother and stepfather following their marriage earlier that year. Mr. Salazar has a seventeen-year-old brother. Mr. Salazar's attorney advised that Mr. Salazar's biological father, who is his only

---

[2] The Government has adduced video footage of two individuals firing a machinegun into a wooded area at a public park on the evening of September 4, 2025. Dkt. 26 (Ex. 8, manually filed). In its response brief, the Government asserts that Mr. Salazar is one of the individuals depicted in the video. Dkt. 24 at 10. At the detention hearing, however, the Government represented to the Court that while Mr. Salazar "was not" firing the weapon at the park, the "video was on his iCloud." Dkt. 21-1 at 40; *e.g., id.* at 12–13 (Agent Callahan describing "two individuals" in the video footage).

other immediate family member, lives in Colombia. During the six months following his October 2024 graduation from Brownsburg High School, Starns Decl. ¶ 3, dkt. 21-1, Mr. Salazar worked at a factory, though he is not currently employed. Dkt. 21-1 at 29. In addition to the instant offense, Mr. Salazar's criminal history includes a July 2025 misdemeanor charge from Cook County, Illinois, for the illegal possession of ammunition, which charge remains pending. (The details of the Cook County charge are not known, beyond Mr. Salazar's counsel's representation at the detention hearing that "multiple people were in the vehicle that was pulled over in Chicago." Dkt. 21-1 at 27.)

In preparing the PS3, the Probation Office was unable to make contact with Mr. Starns, which Mr. Salazar explains as due in part to the relatively short period of time between his initial appearance (on December 22, 2025) and the date that the PS3 was issued (on December 23, 2025). (The Probation Office reportedly attempted to reach Mr. Starns via the telephone but was unable to leave messages because "no voice message was set up." *Id.* at 33.) During the hearing, Mr. Salazar's attorney advised that Mr. and Ms. Starns are in possession of Mr. Salazar's passport and visa, which they would surrender to law enforcement, if necessary, as a condition of Mr. Salazar's pretrial release. *Id.* at 31.

Our review of the pretrial detention order is *de novo*, as required by 18 U.S.C. § 3145(b). Consistent with the Magistrate Judge's findings and conclusions, we also find that were he to be released, no condition or combination of conditions would overcome the risk that Mr. Salazar would flee or that he poses a danger to the safety of the community. We further hold that Mr. Salazar's continued pretrial detention is necessary and appropriate

pursuant to his background and the underlying factual allegations in this prosecution as well as the applicable statutory requirements.

Pursuant to 18 U.S.C. § 3142(e)(1), a defendant "shall be" detained before trial if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community . . . ." 18 U.S.C. § 3142(e)(1). In determining whether conditions of release will reasonably assure a defendant's appearance and the safety of the community, the Court takes into account several factors, including: (1) the nature and circumstances of the charged offense; (2) the weight of evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The Government ultimately bears the burden of proving flight risk by a preponderance of the evidence and danger to the community by clear and convincing evidence. *United States v. Portes*, 786 F.2d 758, 764–65 (7th Cir. 1985).

Here, notwithstanding Mr. Salazar's minimal criminal history and the Starnses' assurances that they are able to provide Mr. Salazar with a safe residence upon his release, the Government has successfully established Mr. Salazar's risk of flight by a preponderance of the evidence and Mr. Salazar's danger to the community by clear and convincing evidence. Accordingly, we hold that his pretrial detention is warranted.

More specifically, the nature and circumstances of the offense charged weigh against his pretrial release. A violation of § 922(o) involves the unlawful possession of a machinegun. *See* 18 U.S.C. § 3142(g)(1) (assessment of the nature and circumstances of

6

the offense includes whether firearms are involved). The statutory maximum sentence for a § 922(o) violation is ten years. 18 U.S.C. § 924(a)(2). (In contrast, Mr. Salazar highlights that the maximum penalty under the felon-in-possession statute, 18 U.S.C. § 922(g), is fifteen years. 18 U.S.C. § 924(a)(8).) Notably, § 922(o) includes neither a mandatory minimum nor a presumption of detention. *See* 18 U.S.C. § 3142(e)(3).

Regarding the specific circumstances of this prosecution, the firearm allegedly possessed by Mr. Salazar was equipped with an internal sear, that is, a concealed mechanism that allows a semi-automatic firearm to operate as a machinegun. Additionally, law enforcement agents discovered an assortment of spent and unspent ammunition in Mr. Salazar's vehicle. Mr. Salazar argues that, prior to the October 21st traffic stop, several other individuals had been inside his vehicle, dkt. 21-1 at 22–23, and that he fully complied with law enforcement directives during the traffic stop. Dkt. 29 at 3. We agree that the absence of a mandatory minimum sentence requirement as well as the presumption in favor of his pretrial release, coupled with Mr. Salazar's cooperation with law enforcement officers during the October 21st traffic stop, provide support for Mr. Salazar's pretrial release. However, we are not persuaded by the fact that other individuals reportedly had had access to Mr. Salazar's vehicle prior to its search in terms of reducing the dangerousness of the alleged offense, given that Mr. Salazar was the sole occupant of the vehicle at the time of the traffic stop. In addition, the fact that the handgun had been modified to operate as machinegun through a concealed sear enhances the seriousness and dangerousness of the alleged offense, thereby supporting Mr. Salazar's pretrial detention.

In analyzing the weight of evidence against Mr. Salazar in this prosecution, we conclude that it appears to be strong. Notwithstanding the fact that other individuals may have had access to his vehicle, we say again that it is undisputed that Mr. Salazar was the vehicle's sole occupant when he was stopped on October 21st and when the machinegun was found beneath the driver's seat. Moreover, video evidence adduced during the detention hearing revealed instances when Mr. Salazar had wielded fully automatic firearms, including the one located inside his car, in a careless and dangerous manner. His random, seemingly indiscriminate discharges of weapons from inside moving vehicles is particularly worrisome. *See, e.g.*, dkt. 26 (Ex. 2, manual filing).

Mr. Salazar's history and personal characteristics also weigh in favor of his pretrial detention. He is eighteen years old with no prior convictions, though at the time of the October 21st traffic stop he was on pretrial release for an Illegal Possession of Ammunition charge out of Cook County, Illinois. Mr. Salazar represented that he plans to reside with his family in Brownsburg, Indiana, if he is released, but he was not living with his parents at the time of the instant offense. Beyond Mr. Starns's written assurances that Mr. Salazar's family promises to hold him accountable in the future, *see* Starns Decl. ¶ 9, dkt. 21-2, we are dubious of Mr. Salazar's willingness to yield to his parents' supervision and control over him. Further, we regard Mr. Salazar's ties to the community as loose, at best, given his current lack of employment and his not being enrolled in any educational program(s). Mr. Salazar also has significant ties outside of the United States, given that his biological father

resides in Colombia.[3] (Despite his status as a permanent resident in the United States, Mr. Salazar faces some the possibility of deportation if he is convicted of the charged offense. Dkt. 21-1 at 17.) The photos and videos tied to Mr. Salazar's iCloud account, which were introduced into evidence, also reveal Mr. Salazar's participation in various other likely illegal activities, i.e., possession of controlled substances and firing machineguns out of moving vehicles.

Finally, in reviewing the nature and seriousness of the risk Mr. Salazar poses to the safety of the community, significant concerns exist. The evidence uncovered in Mr. Salazar's iCloud account as well as the initial NIBIN report connecting the firearm from Mr. Salazar's vehicle to an Indianapolis homicide and several incidents of criminal recklessness are especially worrisome. Although the probative value of the NIBIN report is limited, we cannot ignore certain facts relating to the machinegun's recent history.

Based on this *de novo* review of Mr. Salazar's detention, we conclude by a preponderance of the evidence that Mr. Salazar's relatively insubstantial ties to this community, along with his significant connection to a foreign country (including the possibility of deportation if convicted) along with the evidence of his access to controlled

---

[3] In seeking Mr. Salazar's pretrial detention, the Government has also introduced an undated text message exchange between Mr. Starns and Mr. Salazar wherein Mr. Salazar indicated, in response to news that the state charges had been dropped, the possibility that he returns to Colombia for two to three months. Dkt. 21-1 at 31; Dkt. 24 at 15. According to the Government, this electronic correspondence signals a possible intention by Mr. Salazar to abscond from the United States. Mr. Salazar rejoins that the Government has unfairly taken this text conversation out of context and ignored other aspects of the conversation reflecting that Messrs. Starns and Salazar both expressed a need to consult with an attorney to better understand the status of the ongoing criminal investigation. Dkt. 29 at 4–5; Starns Decl. ¶ 6, dkt. 21-2. Due to the parties' competing interpretations of these communications, we regard it as minimally relevant to Mr. Salazar's risk of flight.

substances and firearms all support the conclusion that he poses a serious flight risk. We also find by clear and convincing evidence that his release would pose a significant danger to the community such that no condition or combination of conditions could be fashioned that would reasonably assure his appearance in court and protect the public. The Magistrate Judge's order detaining him is therefore sustained and Defendant's Motion to Revoke Detention Order [Dkt. 21] is **DENIED**.

IT IS SO ORDERED.

Date: 2/5/2026

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Samantha Spiro
DOJ-USAO
samantha.spiro@usdoj.gov

William H. Dazey , Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org

Justin Bish
DOJ-Crm
Violent Crime and Racketeering Section
justin.bish@usdoj.gov